IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>EDWARD ROSENTHAL,<br><br>    Defendant.<br>_____/ | No. CR 02-00053 CRB<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL** |

On May 30, 2007, a jury convicted defendant Edward Rosenthal of violating the federal Controlled Substances Act. The jury found that Rosenthal had manufactured and conspired to manufacture and distribute marijuana and had maintained a place for the manufacture of marijuana. The conviction arose out of Rosenthal's operation of an indoor marijuana-growing facility in Oakland, California. Now pending before the Court is Rosenthal's motion for a new trial. In light of the extensive record spanning more than four years, the Court concludes that oral argument is unnecessary and DENIES defendant's motion.

**BACKGROUND**

A jury first convicted Rosenthal of these charges in January 2003. During those proceedings, Rosenthal vehemently argued that the Court should allow the jury to consider his assertion that he was manufacturing marijuana for medical purposes. The Court, upon motion of the government, excluded any evidence of a "medical marijuana" defense on the

1 ground that under federal law the alleged purpose of Rosenthal's manufacture of the
2 marijuana is irrelevant.

3 Rosenthal appealed his conviction. The Ninth Circuit affirmed the Court's
4 exclusion of Rosenthal's medical marijuana defense. United States v. Rosenthal, 454 F.3d
5 943, 947 (9th Cir. 2006) (adopting the district court's reasoning "in whole"). The court
6 nonetheless reversed Rosenthal's conviction solely on the ground that a juror had
7 consulted with an attorney-friend during deliberations. Id. at 950.

8 The government subsequently obtained a superseding indictment that renewed the
9 marijuana charges, but also added new charges for tax evasion and money laundering.
10 The Court dismissed the new charges on the ground that they created an appearance of
11 vindictive prosecution and the case proceeded to trial on five counts related to the
12 manufacture and distribution of marijuana. The jury convicted Rosenthal of three counts,
13 acquitted him of one, and hung on another which the government then dismissed with
14 prejudice.

15 Rosenthal now moves pursuant to Federal Rule of Criminal Procedure 33 for a new
16 trial. He first argues that the Court erred by excluding 60 percent of the jury pool because
17 they could not be impartial and by questioning the jury about their views about medical
18 marijuana. Next, he argues that the Court's instruction on "knowingly" was erroneous.
19 As with the first trial, Rosenthal again argues that the Court erred by not allowing him to
20 present his medical marijuana defense and, in a related argument, he contends that the
21 Court should have allowed him to present evidence of the scientific value of medical
22 marijuana. Finally, Rosenthal asserts that the Court denied him his right to testify by
23 limiting his ability to present evidence to corroborate his testimony about medical
24 marijuana.

25 //
26 //
27 //
28 //

**DISCUSSION**

**I. Voir Dire**

Rosenthal argues that he was denied a fair trial because "the Court excluded over sixty percent of the potential jurors based solely on their views of medical marijuana, which aligned with the defendant's views." Defendant's Motion at 5.

A criminal defendant is "not entitled to a jury of any particular composition." Taylor v. Louisiana, 419 U.S. 522, 538 (1975). A defendant is no more entitled to a jury that holds a particular viewpoint than one that is all of one race or religion. The purpose of voir dire is not to enable the parties to sculpt a jury of their liking, but rather "to ferret out prejudices in the venire that threaten the defendant's Sixth Amendment right to a fair and impartial jury." United States v. Howell, 231 F.3d 615, 627 (9th Cir. 2000). The relevant question on voir dire, therefore, is not whether a juror harbors a particular belief or opinion, but rather whether that belief or opinion will "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 433 (1985) (internal quotation marks and citation omitted). If it appears to the court that a prospective juror will not be impartial in his evaluation of the case, the juror must be removed for cause whether his partiality would tend to benefit the government or the accused. See United States v. Gonzalez, 214 F.3d 1109, 1112 (9th Cir. 2000) (a juror is properly excused when the juror's state of mind "leads to an inference that the person will not act with entire impartiality") (quoting United States v. Torres, 128 F.3d 38, 43 (2d Cir. 1997)); see also Howell, 231 F.3d at 627 (holding that the trial judge has an obligation to excuse a prospective juror if actual bias is demonstrated).

Rosenthal's assertion that the Court excused jurors because of their views on medical marijuana is false. The Court expressly advised the jury panel that they would not be excused for holding a certain view:

> First of all, it's entirely proper for jurors to have views on any situation. There is nothing wrong with that. Our form of Government, encourages that. And it's important to have views.
>
> And this is not a trial about trying to change your views. This is not the legislature and this is not Congress. This is a court of law. And so that you hold a view contrary to the law or about some of the issues that we may address in the next couple of weeks is perfectly all right. And nobody is going to ask you to change your views.

May 14, 2005, Trial Transcript ("RT") RT 10. The Court then explained that what it needed to know is not so much what the jurors' views are, but rather, whether "those views would affect your ability to be an impartial juror in this case." RT 11. The Court continued: "At the end of the day, which is during the course of deliberations, you want to be sure that whatever verdict you arrive at was not influenced by views that you held at the outset of the proceedings. But was influenced solely by the evidence that is presented to you and by the law as I give it to you." RT 11-12.

To determine whether any juror held views about the federal marijuana laws that would preclude the juror from being impartial, the Court asked each juror: "[d]o you hold views on this subject that may affect your ability to apply the law which makes these activities illegal." RT 13. Those jurors who answered yes were questioned further. Only those prospective jurors who stated unequivocally that they could not be impartial were excused for cause; the Court did not excuse a single prospective juror because the juror held a view about the federal marijuana laws. It is therefore unsurprising that Rosenthal does not support his contention by identifying any instance in which a prospective juror was excused because of his or her view rather than because the juror stated that he or she could not act impartially. Indeed, the only juror identified by Rosenthal in his motion stated explicitly that he could *not* be impartial. RT at 101, l. 24 ("Three reasons why I could not be fair and impartial."). Moreover, the Court also excused for cause jurors who expressed pro-government reasons for not being impartial. See, e.g., RT at 103, ll. 3-22 (juror stating that he could not be impartial because his brother is a police officer); RT at 105, ll. 12-25 to 106, l. 4 (juror stating that as a parent with young children who is opposed to drug use she could not be impartial).

4

1    This record explains why Rosenthal did not object to the Court's excuse of any
2 juror. Id. at 134, l. 22.  Nor did he object to the Court's voir dire questions.  His only
3 objection was that in light of the number of jurors who stated that they could not be
4 impartial, 60 percent of the jury pool was excused for cause.  He did not then, and does not
5 now, cite any law that suggests that in such a situation the defendant is entitled to a new
6 trial.  His motion for a new trial on this basis fails.
7    Rosenthal also appears to argue that the Court erred by mentioning medical
8 marijuana to the prospective jurors.  Again, Rosenthal did not raise any objection to such
9 questions during the voir dire; to the contrary, Rosenthal specifically asked the Court to
10 question the jury panel on whether they could put aside their views on medical marijuana
11 and be impartial.  Defendant's Supplemental Proposed Voir Dire, Docket No. 574.
12 Defendant's proposed voir dire questions are precisely the questions the Court asked.
13 Moreover, defendant proposed the questions after the Court had ruled that Rosenthal could
14 not present a medical marijuana defense.  While such evidence is not a valid defense to the
15 federal charges, evidence of medical marijuana would inevitably come up, and did come
16 up, during the trial; that is why the Court and defendant proposed that the jury be
17 questioned about their ability to be impartial in light of their views.

18 **II.   "Knowingly" Instruction**

19   The Court instructed the jury as to the "knowingly" element of the crimes charged
20 as follows:

21   An act is done knowingly if the defendant is aware of the act.  The
     government is not required to prove that the defendant knew that his acts or
22   omissions were unlawful.  You may consider evidence of the defendant's
     words, acts, or omissions, along with all other evidence in deciding whether
23   the defendant acted knowingly.

24 RT at 1530.  This instruction follows verbatim the Ninth Circuit Model Instruction
25 (Criminal) 5.6, except that it omits the words "and does not act through ignorance, mistake
26 or accident."  The Court omitted such words because there was no evidence at trial that
27 Rosenthal acted through "ignorance, mistake or accident; that is, evidence that he did not
28 know he was manufacturing or distributing marijuana.  United States v. Fejes, 232 F.3d

5

1  696, 702 (9th Cir.2000) ("[A] defendant is entitled to have the judge instruct the jury on
2  his theory of defense, provided that it is supported by law *and has some foundation in the*
3  *evidence*") (internal quotation marks and citations omitted) (emphasis added).

4  Rosenthal claims that this omission burdened his ability to make his closing
5  argument, but he does not identify a single argument that the Court's omission foreclosed
6  him from making. His inability to identify any argument is unsurprising given that it is
7  undisputed that there was no evidence in the record from which a jury could conclude, or
8  even suspect, that Rosenthal acted through "ignorance, mistake or accident." Such
9  instruction was wholly inapplicable to the facts of this case.

## III. Post-Verdict Error

Defendant also accuses the Court of "committ[ing] post-conviction error through its judicial comments to the jury after deliberations had concluded." RT 9. Defendant's extraordinary allegation is completely unsupported; defendant has refused to provide any information about his allegation–even though there is no legal impediment to his doing so. Accordingly, such alleged error cannot be the basis for overturning his conviction. In any event, the Court is not aware of any comments that would somehow constitute post-conviction error, whatever that is.

## IV. Exclusion of Evidence and Argument

Rosenthal identifies a litany of areas where the Court's exclusion of evidence or argument allegedly deprived him of a fair trial.

### A. Closing Argument

During his closing argument Rosenthal attempted to argue about matters not in evidence and not relevant to the issues before the jury. He attempted to argue about the Scopes Trial. RT at 1479. Despite the rulings of this Court, the Ninth Circuit, and the Supreme Court, he attempted to argue about medical marijuana. RT at 1481. He attempted to comment on the ethnicity of the prosecution team. RT at 1482. Finally, he sought to argue about "Osama Bin Ladin, weapons of mass destruction, Iraq, Katrina, fired prosecutors, Alberto Gonzalez, and George W. Bush." RT at 1491. The Court precluded

1  defendant from making such arguments.  While defendant claims that such argument is
2  proper, he does not cite a single case that even remotely suggests that he is correct.

### B. Preclusion of Witnesses

Defendant also contends that the Court improperly excluded several witnesses. Defendant does not identify what relevant evidence these witnesses had to offer; accordingly, there is no basis for the Court to grant the motion for new trial on this ground.

In any event, prior to trial the Court ordered defendant to provide the Court, under seal, a proffer as to the proposed testimony of his witnesses.  Such proffer was necessary because of defendant's insistence on making a medical marijuana defense despite the rulings of the Ninth Circuit and the United States Supreme Court.  The Court then excluded those witnesses, including Silver, that defendant proffered would testify as to the matters previously ruled inadmissible.

At the close of the government's case, however, the Court specifically advised defendant that the Court would, outside the presence of the jury, review a further proffer as to any witness defendant wished to call so that defendant would not have to face the spector of having the witness's testimony objected to in front of the jury.  RT 1231.  The Court specifically stated that it was setting aside all previous rulings as to why a defense witness should not testify so that defendant could make an offer of proof as to any witness he wanted to call.  The Court explained, however, that any testimony as to the alleged medical purpose of Rosenthal's manufacture and distribution of marijuana would be inadmissible as irrelevant.  RT 1232-1234.

Defendant nonetheless chose to rest without calling any witnesses.  RT 1234. Defendant then made an oral proffer as to some witnesses.  RT 1238-1239.  All of the proffered testimony had already been ruled inadmissible in the first trial.  The only exception is that defendant also wanted to call the prosecutor to demonstrate that he is in a RICO conspiracy to violate federal law with one of the government's witnesses.  RT 1239, 1245.  The Court ruled such testimony was also inadmissible.

7

Rosenthal's complaint about the Court's order precluding the testimony of his former attorney, Carol Ruth Silver, is therefore meritless. During the trial, Ms. Silver's name arose in the context of Exhibit 83, a small claims action for nonpayment of a debt brought by Rosenthal against Bob Martin, a government witness. RT 1172-1175. Defendant never even hinted that he wanted to call Ms. Silver to discuss Exhibit 83. As is explained above, the Court expressly gave defendant the opportunity make an offer of proof as to any witness he wanted to call. The Court, therefore, never precluded defendant from calling Ms. Silver to discuss Exhibit 83. Defendant's suggestion to the contrary is not supported by the record. Moreover, defendant does not identify what relevant testimony Ms. Silver could have given; he does not challenge her statement in a judicial pleading filed on Rosenthal's behalf that Rosenthal sued Martin to recover money owed for marijuana.

### C. Foundation

Rosenthal next contends that the Court denied him the opportunity to challenge the foundation of some of the government's documents. Rosenthal's characterization of the record is wrong. At Rosenthal's request, the Court had the government recall the witness to lay the foundation for the documents, even though defendant did not, in fact, challenge the authenticity of the documents. RT at 358-63. Defendant then cross-examined the witness about the documents. RT at 363-367. At the end of defendant's examination the Court admitted the documents. Notably, defendant does not even argue that the challenged documents–or any documents–should not have been admitted.

### D. Written Orders

Finally, and, once again, without citation to any support, defendant complains that the Court did not enter *written* orders on all of the motions in limine, requests for jury instructions, and all of defendants' many motions. The Court held multiple hearings on the motions in limine and jury instructions and gave its reasons for its rulings. On March 1, 2007, the Court issued a written order denying nearly all of Rosenthal's many motions to dismiss. The Order stated that the Court would issue a further ruling explaining its

reasons at a later time. Upon reflection, the Court concluded that no further explanation was needed. Where the Court has determined that a written explanation is required, such as when it dismissed the new counts on the basis of an appearance of vindictive prosecution, it has done so.

**V.   Defendant's Remaining Arguments**

Defendant's remaining arguments are not persuasive and do not require further discussion.

## CONCLUSION

For the reasons stated above, Rosenthal has failed to establish that he is entitled to a new trial. Accordingly, Rosenthal's motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated: July 6, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2002\0053cr\orderresecondnewtrial.wpd